ALLYN & FORTUNA, LLP
Nicholas Fortuna (NF 9191)
Jesse A. Kaplan (JK 4594)
Attorneys for Defendant
*DETROIT PHONE CARDS INC. D/B/A OMOBILE*
200 Madison Avenue, 5th floor
New York, New York, 10016-3903
Ph: (212) 213-8844
Fax: (212) 213-3318

**UNITED STATES DISTRICT COURT,
SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

XTREME MOBILE INC.,                                     **Docket No.: 07 CV 9528**

              Plaintiff,

        -against-

DETROIT PHONE CARDS INC. D/B/A
OMOBILE,

              Defendant.
------------------------------------------------------------------X

## **DETROIT PHONE CARDS INC., D/B/A OMOBILE'S COUNTERCLAIMS**

Defendant Detroit Phone Cards Inc., d/b/a Omobile ("Omobile") by its attorneys Allyn & Fortuna LLP, hereby alleges counterclaims against Xtreme Mobile, Inc. ("Extreme"), as follows:

### **JURISDICTION AND VENUE**

1.      Omobile asserts counterclaims based on trademark infringement, unfair competition/false designation of origin, and for false advertising/disparagement under the Trademark Act of 1946, 15 U.S.C. §1051, *et seq.* as amended (the "Lanham Act"), and for interference with a prospective advantage, defamation, three counts of breach of contract, interference with a contractual relationship, and unfair competition under the applicable state law. This Court has original jurisdiction over this action under Section 39 of the Federal

Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.

2. This Court has personal jurisdiction over Xtreme in that it resides and conducts business in this judicial district, the acts of complained of herein are believed to have occurred in this judicial district, Xtreme otherwise can be found in this judicial district, and Xtreme has consented to jurisdiction by bringing this action in a court in this judicial district.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Xtreme resides in this judicial district and/or a substantial part of the events giving rise to the cause of action occurred in this judicial district.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF

4. Detroit Phone Cards, Inc., d/b/a/ Omobile ("Omobile") is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business located at 6500 Schaefer Road, Dearborn, Michigan 48126.

5. Omobile is in the business of selling prepaid wireless communications goods and services throughout the United States. Omobile sells these goods and services to both end users and various dealer/retailers that sell these goods and services under the Omobile brand name.

6. Omobile and/or Omobile dealer/retailers sell consumers a phone as well as a branded Omobile airtime plan consisting of an allotted amount of prepaid airtime minutes for a given time period. Once an Omobile subscriber either uses up his of prepaid airtime, or the time period expires, the Omobile subscriber must purchase an additional airtime plan from Omobile or an Omobile dealer/retailer.

7. As of August 2007, Omobile had approximately 15,000 subscribers.

8. Since 2003, Omobile has continuously and actively used the distinctive trademark "Omobile" and "Omobile PCS" to uniquely identify the source of its goods and services to consumers and to distinguish its goods and services from those of other entities.

9. Since approximately 2003, Omobile has also used a distinctive Omobile logo to uniquely identify the source of its goods and services to consumers and to distinguish its products or services from those of other entities. This logo also constitutes a trademark.

10. Omobile is the sole owner of the Omobile trademarks.

11. As a result of the quality and the commercial success of Omobile's goods and services, Omobile's trademarks have acquired considerable value and have become associated throughout the consuming public with Omobile in connection with the sale of Omobile's goods and services.

12. In or around September 2004, Omobile entered into a written contract with non-party Phonetec, LP ("Phonetec") (the "Phonetec/Omobile Agreement"). The Phonetec/Omobile Agreement required Phonetec to sell both airtime minutes and mobile phones to Omobile in accordance with a pricing schedule annexed to the Phonetec/Omobile Agreement.

13. Phonetec also agreed to provide Omobile with free starter minutes to offer as a promotion to new Omobile subscribers ("Free Promotional Airtime"). Each time Omobile or an Omobile dealer/retailer activated a new phone for an Omobile subscriber, Phonetec agreed to provide that subscriber with 100 minutes of free airtime and unlimited free airtime at night and on weekends for the two weeks following the activation of the Omobile subscribers' phone.

14. Phonetec's invoices to Omobile confirmed that Omobile was not being charged for the Free Promotional Airtime.

15. After entering into the Phonetec/Omobile Agreement, Phonetec provided Omobile with access to an internet website which served as a platform for Omobile to fully manage all of its subscriber accounts. Amongst other things, this website allowed Omobile to activate phones and plans, deactivate phones and plans, swap plans, and change phone numbers.

16. Phonetec also agreed to pay Omobile commissions for providing Phonetec with new accounts at a rate of five percent of all revenue that Phonetec earned as a result of accounts facilitated through Omobile.

17. On information and belief, plaintiff Xtreme Mobile, Inc. ("Xtreme") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 50 Main Street, White Plains, New York 10606.

18. Upon information and belief, Xtreme is in the business of selling prepaid wireless communications services and phones.

19. In or around June 2007, Phonetec and Xtreme executives met with Omobile's principal at Omobile's Dearborn Michigan headquarters.

20. Though the precise nature of the relationship between Phonetec and Xtreme was not explained, Omobile was told that Xtreme was an investor in Phonetec.

21. At that meeting, Xtreme's Chief Executive Officer, Craig Lisbon, stated that Xtreme wanted to takeover all of Omobile's accounts and sought to essentially acquire Omobile.

22. Omobile told Xtreme that it had expended a great deal of time, money, and effort in building up the Omobile brand name and business, and Omobile was not interested in such a relationship with Xtreme.

23. Xtreme also claimed that Omobile was required to retroactively pay for the Free Promotional Airtime that Phonetec previously provided to Omobile's customers, even though

Phonetec had agreed that Omobile would not be charged for same.

24. Omobile denied that it was retroactively required to make such payments.

25. Subsequent to the June 2007 meeting, Omobile continued to purchase goods and services from Phonetec pursuant to the Phonetec/Omobile Agreement.

26. Subsequent to the June 2007 meeting, Omobile continued to utilize the Phonetec website to manage its subscriber accounts.

27. Subsequent to the June 2007 meeting, Omobile began to receive invoices from Xtreme rather than Phonetec for goods and services that Omobile had purchased pursuant to the Phonetec/Omobile Agreement.

28. Xtreme's invoices contained rates that were significantly higher than the rates previously agreed upon in the Phonetec/Omobile Agreement.

29. Omobile had determined that Xtreme had significantly over billed Omobile.

30. Phonetec also owed Omobile over $150,000 in commissions.

31. Omobile also learned that Xtreme had been "skimming" minutes from the airtime that it provided to Omobile. That is, Xtreme was not providing all the airtime that was purchased.

32. Omobile disputed the amounts reflected in Xtreme's invoices.

33. Despite the inaccuracies in Xtreme's invoices, Xtreme's skimming, and the amounts that Phonetec owed Omobile, Xtreme threatened to terminate service to Omobile. Xtreme also threatened to terminate Omobile's service unless Omobile retroactively paid for the Free Promotional Airtime that Phonetec previously provided to Omobile's customers, even though Phonetec had agreed that Omobile would not be charged for same.

34. On August 27, 2007, Xtreme terminated Omobile's service. In doing so, Omobile

was not longer able to access the Phonetec website that it used to manage its subscriber accounts. Xtreme also cutoff Omobile's ability to sell Phonetec airtime to Omobile's subscribers.

35. Though Xtreme cutoff Omobile's service, Xtreme did not disconnect service to Omobile's subscribers. That is, Omobile's subscribers were still able to continue using the Omobile airtime plans that they had purchased for their phones.

36. Shortly after August 27, 2007, Omobile found another provider to purchase mobile phones and airtime minutes from.

37. Xtreme, however, intentionally stonewalled Omobile's ability to sell new Omobile plans to its existing subscribers as well as new customers.

38. After a number of Omobile subscribers sought to purchase new airtime plans from Omobile and/or Omobile dealers/retailers, Omobile learned that Xtreme was preventing Omobile from loading new Omobile airtime plans on existing Omobile phones for a 90 day period. Upon information and belief, Xtreme did so by blocking Omobile's subscribers' telephone numbers for a 90 day period.

39. Shortly after August 27, 2007, Xtreme began disseminating advertisements to both Omobile's subscribers, Omobile's dealers/retailers, and to the general public stating that in order for Omobile customers to maintain service on their phone, they were required to purchase Xtreme mobile plans.

40. Xtreme contacted Omobile dealers/retailers and told them that Omobile was out of business and that Xtreme would be offering goods and services in Omobile's place. These statements were patently false.

41. Xtreme also used Omobile's trademarks to misdirect consumers interested in Omobile goods and services to purchase Xtreme's goods and services.

42. www.easystreetpcs.com ("Easystreet.com"), is an internet website whereby various mobile phone service providers may advertise, offer for sale, and sell prepaid wireless goods and services.

43. Easystreetpcs.com allows consumers to view different prepaid wireless service providers' goods and services by linking the consumer to a portion of Easystreetpcs.com designated for each service provider.

44. Easystreetpcs.com contains a link for "Omobile PCS."

45. This link allows consumers to view a portion of the website containing Omobile's trademarks.

46. The Omobile portion of Easystreetpcs.com contains the following statement: "Please note O-Mobile is now Xtreme Mobile." It also contains a link to advertisements for Xtreme airtime plans.

47. That statement was and continues to be patently false.

48. Upon information and belief, this statement was made by or at the direction of Xtreme.

49. Omobile never authorized Xtreme or Easystreetpcs.com to use Omobile's trademarks and make the statements found on Easystreetpcs.com regarding Omobile.

50. As a result of the conduct described above, Omobile has lost existing subscribers as well as new customers.

## COUNT I

### (Federal Trademark Infringement)

### (15 U.S.C. § 1114)

51. Omobile repeats and incorporates by reference the allegations in paragraphs 1-50, inclusive.

52. Xtreme used Omobile's trademarks in connection with the advertisement, distribution, offer for sale and/or sale of its goods and services.

53. Xtreme's use of Omobile trademarks in connection with the advertisement, distribution, offer for sale and/or sale of Xtreme's goods and services is likely to cause and is causing confusion, mistake and deception among consumers as to the origin of Xtreme's goods and services, and is likely to deceive the public into believing that said goods and services emanate from, are associated with and/or is otherwise authorized or endorsed by Omobile, all to the damage and detriment of Omobile's reputation and goodwill.

54. Xtreme's aforesaid actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

55. Xtreme's conduct, as described above, is done willfully with knowledge of and/or grossly reckless disregard for Omobile's rights.

56. Omobile has no adequate remedy at law and, if Xtreme's conduct is not enjoined, will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT II

**(Federal Unfair Competition and False Designation of Origin)**

**(15 U.S.C. §1125(a)(1)(A))**

57. Omobile repeats and incorporates by reference the allegations in paragraphs 1-56, inclusive.

58. Through its advertising, marketing, offering for sale and sale of goods and services, Xtreme misrepresents and falsely suggests to the general public the origin and source, sponsorship and endorsement of Xtreme's goods and services, and misrepresents its affiliation, connection, and association with Omobile.

59. Xtreme's unauthorized and unlawful use of the Omobile's trademarks in connection with Xtreme's advertising, marketing, offering for sale and sale of mobile phone goods and services, creates the express and implied misrepresentation that Xtreme's goods and services originated from, are authorized, endorsed, sponsored or approved by Omobile.

60. Xtreme's unauthorized and unlawful use of the Omobile's trademarks in connection with Xtreme's advertising, marketing, offering for sale and sale of goods and services, creates the express and implied misrepresentation that Xtreme is affiliated, connected, and/or associated with Omobile.

61. Xtreme falsely claimed that Omobile had become Xtreme and that Omobile's subscribers were required to purchase Xtreme service plans in order to maintain service on their phones.

62. Xtreme's conduct as described above is done willfully with knowledge and/or grossly reckless disregard for Omobile's rights.

63. Xtreme's aforesaid acts violate Omobile's rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A), in that Xtreme's willful and intentional conduct, in connection with goods and services sold in commerce, constitute a false designation of origin, false or misleading description of fact, and/or false or misleading representation of fact likely to cause confusion or deceive the consuming public as to the origin, sponsorship and/or approval of Xtreme's goods and services.

64. Omobile has no adequate remedy at law and, if Xtreme's conduct is not enjoined, will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT III

### (Federal False Advertising and Disparagement)

### (15 U.S.C. §1125(a)(1)(B))

65. Omobile repeats and incorporates by reference the allegations in paragraphs 1-64, inclusive.

66. Xtreme is a provider of prepaid wireless communications goods and services.

67. Xtreme competes with Omobile.

68. Xtreme made false and misleading statements of fact regarding Omobile and Omobile's services.

69. Xtreme falsely claimed that Omobile had gone out of business and/or was going out of business, and that Omobile was unable to provide service to its existing subscribers and to the public.

70. Xtreme falsely claimed that Omobile had become Xtreme and that Omobile's customers were required to purchase Xtreme service plans in order to maintain their mobile phone service.

71. Xtreme's false and misleading statements constitute commercial speech and were made during the course of commercial activity.

72. Xtreme's false and misleading statements were made through commercial advertising and promotion of goods and services sold by Xtreme, including but not limited to email, facsimile, and internet website advertisements directed at existing Omobile subscribers and the public.

73. Xtreme made these false and misleading statements for the purpose of influencing consumers, in particular Omobile's existing subscribers, to purchase Xtreme's goods and services.

74. Xtreme's conduct as described above was done willfully with knowledge and/or grossly reckless disregard for Omobile's rights.

75. As a result of Xtreme's false and misleading statements regarding Omobile, Omobile has been damaged.

76. Xtreme's aforesaid acts violate Omobile's rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), in that Xtreme's willful and intentional conduct, misrepresents the nature, characteristics, qualities, or geographic origin of Omobile's goods, services, and commercial activities as well as its own goods, services, and commercial activities.

77. Omobile has no adequate remedy at law and, if Xtreme's conduct is not enjoined, will continue to suffer irreparable harm and injury to its goodwill and reputation.

## COUNT IV

### (Interference with a Prospective Advantage)

78. Omobile repeats and incorporates by reference the allegations in paragraphs 1-77, inclusive.

79. Xtreme knew that Omobile sells prepaid Omobile airtime plans.

80. Xtreme knew that once Omobile's subscribers' Omobile plans expired, the subscriber would have to purchase an additional airtime plan from Omobile and/or an Omobile dealer/retailer to use their phones.

81. Xtreme preventing Omobile from loading new Omobile airtime plans on existing Omobile phones for a 90 day period. Upon information and belief, Xtreme did so by blocking Omobile's subscribers' telephone numbers for a 90 day period.

82. Xtreme's conduct was a substantial factor in preventing Omobile from loading new Omobile airtime plans on existing Omobile phones.

83. Xtreme's conduct was intentional and with the purpose of diverting Omobile's subscribers to Xtreme.

84. Xtreme intentionally, knowingly, and by wrongful means prevented Omobile from entering into contracts with its subscribers and dealers/retailers that would have been entered into but for Xtreme's interference.

85. As a result of Xtreme's conduct, Omobile has suffered damages.

## COUNT V

### (Defamation)

86. Omobile repeats and incorporates by reference the allegations in paragraphs 1-85, inclusive.

87. Xtreme made false and defamatory statements of fact regarding Omobile.

88. These false and defamatory statements included, but were not limited to, statements that Omobile had gone out of business and/or was going out of business, and that Omobile was unable to provide service to its existing subscribers and to the consumer public.

89. Xtreme publicized these statements to Omobile's existing subscribers, Omobile dealer/retailers, and to the consumer public.

90. Xtreme disseminated advertisements by email and facsimile containing false and defamatory statements of fact regarding Omobile.

91. Xtreme placed advertisements on internet websites containing defamatory statements of fact regarding Omobile.

92. Xtreme made telephone calls to Omobile's existing subscribers and Omobile dealer/retailers and made false and defamatory statements of fact regarding Omobile.

93. At various trade shows, Xtreme made false and defamatory statements of fact regarding Omobile.

94. As a result of Xtreme's false and defamatory statements of fact regarding Omobile, Omobile has been damaged.

## COUNT VI

### (Breach of Contract)

95. Omobile repeats and incorporates by reference the allegations in paragraphs 1-94, inclusive.

96. Upon information and belief, Xtreme assumed Phonetec's duties and obligations under the Phonetec/Omobile Agreement.

97. The Phonetec/Omobile Agreement required Xtreme to provide Omobile and/or Omobile's subscribers with prepaid wireless services.

98. Omobile ordered and paid for certain prepaid wireless services pursuant to the Phonetec/Omobile Agreement.

99. Xtreme failed to provide services that Omobile ordered and paid for by skimming

minutes from plans sold to Omobile.

100.  As a result Xtreme is in breach of contract.

101.  As a result Omobile has been damaged.

## COUNT VII

### (Breach of Contract)

102.  Omobile repeats and incorporates by reference the allegations in paragraphs 1-101, inclusive.

103.  Upon information and belief, Extreme assumed Phonetec's duties and obligations under the Phonetec/Omobile Agreement.

104.  The Phonetec/Omobile Agreement required Xtreme to provide Omobile and/or Omobile's subscribers with prepaid wireless services.

105.  Omobile ordered and paid for certain prepaid wireless services pursuant to the Phonetec/Omobile Agreement.

106.  On August 27, 2007, Xtreme terminated Omobile's service. In doing so, Omobile was no longer able to access the Phonetec website that it used to manage its subscriber accounts. Xtreme also cutoff Omobile's ability to sell Phonetec airtime to Omobile's subscribers.

107.  Xtreme breached the Phonetec/Omobile Agreement by cutting off service to Omobile.

108.  As a result Omobile has been damaged.

## COUNT VIII

### (Breach of Contract)

109.  Omobile repeats and incorporates by reference the allegations in paragraphs 1-108, inclusive.

110. Upon information and belief, Xtreme assumed Phonetec's duties and obligations under the Phonetec/Omobile Agreement.

111. The Phonetec/Omobile Agreement prohibited Xtreme from directly, indirectly, or through an affiliate, soliciting, offering, marketing promoting, competing, or providing Sprint PCS wireless services to any entity person, or business that has Sprint PCS wireless services provided by Omobile.

112. Xtreme directly solicited, offered, marketed, promoted, and provided Sprint PCS wireless services to Omobile's subscribers and dealers/retailers.

113. As a result, Xtreme is in breach of contract.

114. As a result, Omobile has been damaged.

## COUNT IX

### (Interference with a contractual relationship)

115. Omobile repeats and incorporates by reference the allegations in paragraphs 1-114, inclusive.

116. Omobile entered into the Phonetec/Omobile Agreement with non-party Phonetec.

117. Xtreme affirmatively alleges in its complaint in this matter that there is a Phonetec/Omobile Agreement.

118. Xtreme knew or should have known of the existence of the Phonetec/Omobile Agreement along with that agreement's contents.

119. The Phonetec/Omobile Agreement prohibited Phonetec from directly, indirectly, or through an affiliate, soliciting, offering, marketing promoting, competing, or providing Sprint PCS wireless services to any entity person, or business that has Sprint PCS wireless service provided by Omobile.

120. Xtreme is a Phonetec affiliate.

121. Xtreme directly solicited, offered, marketed, promoted, and provided Sprint PCS wireless services to Omobile's subscribers and dealers/retailers.

122. As a result, Phonetec breached the Phonetec/Omobile Agreement.

123. With the intent of causing Phonetec to breach the Phonetec/Omobile Agreement, Xtreme caused and induced Phonetec to breach the Phonetec/Omobile Agreement by allowing Xtreme, one of Phonetec's affiliates, to directly solicit, offer, market, promote, and provide Sprint PCS wireless services to Omobile's subscribers and dealers/retailers.

124. Xtreme's conduct was a substantial factor in causing the aforementioned breach.

125. Xtreme, with knowledge of the existence of the Phonetec/Omobile Agreement, intentionally and without justification, induced Phonetec to breach the Phonetec/Omobile Agreement.

126. As a result of Phonetec's breach, Omobile has been damaged.

## COUNT X

### (New York State Unfair Competition)

127. Omobile repeats and incorporates by reference the allegations in paragraphs 1-126, inclusive.

128. Omobile owns and enjoys trademark rights in New York and throughout the United States. Omobile has developed valuable goodwill in its trademarks.

129. Xtreme's knowing and willful unauthorized use of the Omobile trademarks has permitted Xtreme to palm off its goods and services to the general public as authentic merchandise, all to the detriment of Omobile and the unjust enrichment of Xtreme. Xtreme has

misappropriated and used Omobile's trademarks without Xtreme's authorization and in competition with Omobile's authorized goods and services.

130. Xtreme has knowingly and willfully traded on the goodwill associated with Omobile's trademarks and has misled the public into assuming a connection between its Xtreme's goods and services and Omobile's authentic goods and services.

131. Xtreme's unlawful acts appropriated rights in Omobile's trademarks and Omobile's goodwill for Xtreme's own pecuniary gain and without Omobile's consent. Omobile has expended substantial time, resources and effort to obtain a reputation for excellence in its goods and services that is associated with Omobile's trademarks. As a result of Omobile's efforts, Xtreme is now unjustly enriched and is benefiting from property rights that rightfully belong to Omobile.

132. Xtreme's acts are willful, deliberate, and intended to confuse the public and injure Omobile.

133. Xtreme's acts constitute unfair competition under New York common law.

134. Omobile has no adequate remedy at law and, if Xtreme's conduct is not enjoined, will continue to suffer irreparable harm and injury to its goodwill and reputation.

135. The conduct herein complained of was extreme, outrageous, and was inflicted on Omobile in reckless disregard of Omobile's rights. Said conduct was despicable and harmful to Omobile and as such supports an award of exemplary and punitive damages in an amount sufficient to punish and make an example of Xtreme and to deter it from similar such conduct in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Omobile prays that:

1. Xtreme and all its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Xtreme, or in concert or participation with Xtreme, be enjoined temporarily, preliminarily and permanently, from:

(a) manufacturing, distributing, importing, exporting, marketing, advertising, selling or offering for sale any goods or services containing Omobile's trademarks;

(b) representing that any goods or services manufactured, distributed, imported, exported, advertised, promoted, offered for sale or sold by Xtreme originates from, is licensed, endorsed or authorized by, or is otherwise associated with Omobile;

(c) otherwise using Omobile's trademarks or any reproduction, counterfeit copy or colorable imitation thereof in any manner likely to cause confusion as to the source, origin, sponsorship or affiliation of Xtreme's goods or services manufactured, imported, distributed, advertised by, offered for sale or sold by Xtreme.

2. Xtreme be compelled to pay to Omobile damages in an amount to be determined but equal to treble the greater of Xtreme's profits or Omobile's actual damages, punitive damages in an amount calculated to punish and deter, plus pre-judgment and post-judgment interest, costs and attorneys' fees, pursuant to Omobile's claims for trademark infringement, unfair competition and false designation, and false advertising and disparagement under the Lanham Act, 15 U.S.C. §1117;

3. Xtreme be compelled, pursuant to section 36 of the Lanham Act, 15 U.S.C. §1118, to deliver and destroy all infringing merchandise and any and all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Xtreme's possession and control bearing Omobile's trademarks, or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means for making the same;

4. Xtreme be compelled to pay to Omobile damages in an amount to be determined, punitive damages in an amount calculated to punish and deter, pre-judgment and post-judgment interest, and costs and attorneys' fees, pursuant to Omobile's claims for interference with a prospective advantage, defamation, and interference with a contractual relationship.

5.  Xtreme be compelled to pay to Omobile damages in an amount to be determined, pre-judgment and post-judgment interest, and costs and attorneys' fees, pursuant to Omobile's claims for breach of contract.

6.  Xtreme be ordered to pay to Omobile the costs of this action and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a) and related state statutes;

7.  Omobile obtain such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Omobile, by and through counsel, hereby requests a trial jury in the above-captioned matter

Dated: November 14, 2007
        New York, New York

                                        Respectfully submitted,

                                        ALLYN & FORTUNA LLP

                                        By: _____
                                        Nicholas Fortuna, Esq. (9191)
                                        Jesse A. Kaplan, Esq. (4594)
                                        200 Madison Avenue, 5th Floor
                                        New York, New York 10016
                                        (212) 213-8844
                                        (212) 213-3318 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of defendant's counterclaim was served by E.C.F. and Federal Express, on the 14th day of November, 2007 on the following:

Harvey B. Silikovitz
Cohen & Gresser LLP
100 Park Avenue
New York, New York 10017
(212) 957-7600

Nicholas Fortuna