UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                :
XTREME MOBILE INC.,                                             :
                                                                :    **ECF CASE**
                                 Plaintiff,                     :    (Electronically Filed)
                                                                :
                                                                :
         -against-                                              :    07 Civ. 9528 (HB)
                                                                :
DETROIT PHONE CARDS INC. D/B/A                                  :
OMOBILE,                                                        :    **NOTICE OF MOTION**
                                                                :
                                 Defendant.                     :
                                                                :
-----------------------------------------------------------------x

PLEASE TAKE NOTICE that upon the accompanying memorandum of law, the annexed

declaration of Kathryn L. Barcroft dated March 27, 2008 (the "Barcroft Dec.") and the exhibits

thereto, and all prior papers, pleadings and proceedings herein, plaintiff Xtreme Mobile Inc.

("Xtreme"), by its attorneys, Cohen & Gresser LLP, will move this Court at the United States

Courthouse for the Southern District of New York, 500 Pearl Street, Courtroom 23B, New York,

New York 10007 at a date and time convenient to the Court, for an order (1) pursuant to Fed. R.

Civ. P. 15(a), granting to Xtreme leave to file its proposed First Amended Complaint in the form

annexed as Exhibit F to the Barcroft Dec., and (2) granting such other and further relief as this

Court deems just and proper.  The proposed First Amended Complaint seeks to join Rami

Chahine as an additional defendant, and to add claims for defamation; tortious interference with

contractual relations; tortious interference with business relations; common law unfair

competition; common law conversion; violation of the Computer Fraud and Abuse Act, 18

U.S.C. § 1030; and violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

Dated:    New York, New York
          March 27, 2008

                              COHEN & GRESSER LLP


                          By:_____/s/_____
                              Karen H. Bromberg
                              (kbromberg@cohengresser.com)
                              Harvey B. Silikovitz
                              (hsilikovitz@cohengresser.com)
                              Kathryn L. Barcroft
                              (kbarcroft@cohengresser.com)
                          100 Park Avenue, 23rd Floor
                          New York, New York  10017
                          (212) 957-7600

                          *Attorneys for Plaintiff Xtreme Mobile Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                    :
XTREME MOBILE INC.,                                 :
                                                    :    **ECF CASE**
                                Plaintiff,          :    (Electronically Filed)
                                                    :
       -against-                                    :    07 Civ. 9528 (HB)
                                                    :
DETROIT PHONE CARDS INC. D/B/A                      :    **DECLARATION OF KATHRYN L.**
OMOBILE,                                            :    **BARCROFT IN SUPPORT OF**
                                                    :    **XTREME'S MOTION FOR LEAVE**
                                Defendant.          :    **TO AMEND**
                                                    :
-----------------------------------------------------------------x

        KATHRYN L. BARCROFT, an attorney duly admitted to practice before this Court and

in the courts of the State of New York, hereby declares the following to be true under penalty of

perjury:

        1.      I am associated with the law firm of Cohen & Gresser LLP, counsel for plaintiff

Xtreme Mobile Inc. ("Xtreme") in the above-captioned action. I submit this declaration in

support of Xtreme's motion for leave to file a first amended complaint, in order to assert

additional related claims against defendant Detroit Phone Cards Inc. d/b/a OMobile ("OMobile")

and to join OMobile's President, Rami Chahine ("Chahine"), as an additional defendant. I am

fully familiar with the facts set forth herein, based on my own knowledge and on my review of

my firm's books and records.

        2.      This action was commenced on September 12, 2007 when Xtreme filed a

summons and complaint in the Supreme Court of the State of New York, County of New York.

A copy of Xtreme's initial complaint is attached as Exhibit A.

3.    By notice of removal dated October 24, 2007, OMobile removed this action to this Court. OMobile then filed an answer to Xtreme's initial complaint on or about November 14, 2007. A copy of OMobile's answer is attached as Exhibit B.[1]

4.    The initial complaint asserts two causes of action for breach of contract and one cause of action for unjust enrichment. Those claims arise from OMobile's contractual relationships with Xtreme and with third party Phonetec L.P. ("Phonetec"), which assigned to Xtreme receivables that were due and owing from OMobile. The claims allege, among other things, that OMobile failed to pay for wireless telephone airtime that it purchased from Xtreme and Phonetec. See Ex. A.

5.    The Pretrial Scheduling Order in this case, dated January 24, 2008, set a deadline of April 3, 2008 for assertion of additional causes of action or defenses, and for joinder of additional parties. A copy of the Pretrial Scheduling Order is attached as Exhibit C.

6.    By letter dated February 5, 2008, Karen H. Bromberg, a partner in my firm, advised OMobile's counsel that Xtreme was prepared to amend its complaint to pursue additional claims beyond the claims that were asserted in the initial complaint. In the letter, Ms. Bromberg provided extensive detail about the factual and legal bases of the new claims to be asserted. Thus, OMobile and its President, Chahine, have been on notice of the substance of Xtreme's proposed amended complaint since, at the latest, February 5, 2008.

7.    Xtreme held off on seeking its amendment based on ongoing settlement discussions. By March 21, 2008, it had become apparent that settlement discussions were stalled due to OMobile's counsel, and Xtreme was prepared to proceed with the amendment of its

---

[1]    On or about November 14, 2007, in addition to filing its answer to the complaint, OMobile also filed counterclaims. On December 11, 2007, Xtreme filed a reply to the counterclaims, in which it denied all the material allegations of the counterclaims. While Xtreme believes that the counterclaims are utterly lacking in merit, they are not at issue on the present motion to amend.

complaint. In an attempt to avoid unnecessary motion practice, by email dated March 21, 2008, a copy of which is attached as Exhibit D (without the attachment thereto), I asked OMobile's counsel to stipulate to the filing of Xtreme's proposed amended complaint.

8.    I received no response from OMobile's counsel to that March 21 email. Accordingly, on March 25, 2008, I sent another email to OMobile's counsel in which I stated, "If we do not hear back from you by the end of the day today, we will immediately file a motion to amend our complaint and note your failure to respond to our requests that you consent to the amendment." A copy of my March 25 email to OMobile's counsel is attached as Exhibit E.

9.    Attached as Exhibit F is the proposed first amended complaint that Xtreme seeks leave to file.

10.    The new claims in the proposed amended complaint are for defamation (Count IV); tortious interference with contractual relations (Count V); tortious interference with business relations (Count VI); common law unfair competition (Count VII); common law conversion (Count VIII); violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count IX); and violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.* (Count X).

11.    Virtually no discovery has yet been taken in this matter. While the parties have filed Rule 26(a)(1) initial disclosures, no documents have yet been produced, no interrogatories have been served, and no depositions have been taken, scheduled, or even noticed. No third party subpoenas have been served by Xtreme or, to the best of my knowledge, by OMobile.[2]

---

[2]    The parties had agreed to refrain from taking discovery while they pursued settlement discussions.

WHEREFORE, I respectfully request that this Court grant in all respects Xtreme's motion for leave to file its proposed first amended complaint (Ex. F hereto).

I declare under penalty of perjury that the foregoing is true and correct.


Kathryn L. Barcroft

Executed on March 27, 2008

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------x

XTREME MOBILE INC.,                          :     Index No. 603064/07

                       Plaintiff,            :

          -against-                          :     COMPLAINT

DETROIT PHONE CARDS INC. D/B/A               :
OMOBILE,                                     :

                       Defendant.            :
-----------------------------------------------------------------x

     Xtreme Mobile Inc. ("Xtreme"), by its attorneys Cohen & Gresser LLP, for its Complaint

against Detroit Phone Cards Inc. d/b/a OMobile ("OMobile"), alleges on personal knowledge as

to matters relating to itself and on information and belief as to all other matters, as follows:

## PARTIES

    1.    Plaintiff Xtreme is a corporation organized and existing under the laws of the

State of Delaware, which is registered to do business in New York. Xtreme sells prepaid

wireless telephones (i.e. phones for which the purchase price includes prepaid calling minutes, or

"airtime," and pre-assigned telephone numbers that are linked to those minutes). Xtreme

purchases the airtime and numbers for those phones from wireless carriers, and bundles them for

sale with the telephone equipment.

    2.    Defendant OMobile is a foreign corporation. According to its website, located at

www.omobilepcs.com, OMobile also sells prepaid wireless telephones through dealers

throughout the United States, including numerous retailers in the State of New York.

NEW YORK
COUNTY CLERK'S OFFICE

SEP 1 2 2007

NOT COMPARED
WITH COPY FILE

## JURISDICTION

3.    This Court has personal jurisdiction over OMobile pursuant to CPLR §§ 301 and 302 because, among other things, OMobile regularly does business in the State of New York; many of the transactions of business giving rise to this lawsuit occurred in the State of New York; and OMobile specifically transacted business with Xtreme in the State of New York.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

4.    Xtreme repeats and realleges paragraphs 1 to 3 above as if set forth fully and at length herein.

5.    Sprint Spectrum LP ("Sprint") and Phonetec, LP ("Phonetec"), who are not parties to this action, entered into an agreement under which Sprint sold to Phonetec airtime and telephone numbers on Sprint's wireless network, to be resold for use with prepaid wireless telephones (the "Sprint-Phonetec Agreement").

6.    Phonetec resold some of that airtime (and the linked telephone numbers) to defendant OMobile pursuant to an agreement (the "Phonetec-OMobile Agreement"). OMobile, in turn, resold the airtime and telephone numbers, bundled with OMobile branded prepaid wireless telephones, to consumers.

7.    The Phonetec-OMobile Agreement is valid and enforceable.

8.    Phonetec performed all of its obligations to OMobile under the Phonetec-OMobile Agreement.

9.    OMobile, however, failed to pay Phonetec all of the accrued charges for the airtime and telephone numbers that OMobile purchased from Phonetec. OMobile owes several

hundred thousand dollars pursuant to unpaid invoices for that airtime (and the linked telephone numbers).

10.    In or about July 2007, in exchange for valuable consideration, Phonetec assigned to Xtreme certain of its rights and obligations under the Sprint-Phonetec Agreement and certain other assets of Phonetec (the "Assignment").

11.    Among the rights that Xtreme acquired pursuant to the Assignment was the right to receive $75,000 of the several hundred thousand dollars in receivables that OMobile owed to Phonetec for unpaid invoices.

12.    The Assignment is valid and enforceable.

13.    Xtreme performed all of its obligations under the Assignment.

14.    As a result of the Assignment, together with the obligations that OMobile assumed under the Phonetec-Mobile Agreement, OMobile owes to Xtreme the sum of $75,000 plus interest.

15.    OMobile has failed to pay any part of that $75,000 sum, despite repeated demands by Xtreme.

16.    Accordingly, OMobile is liable to Xtreme for breach of contract.

17.    As a result of such breach, Xtreme has been damaged in the amount of $75,000 plus interest.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

18.    Xtreme repeats and realleges paragraphs 1 to 17 above as if set forth fully and at length herein.

{8888-888/00019526.DOCv}

19.     Subsequent to the Assignment, Xtreme also dealt directly with OMobile and entered into an agreement to sell airtime on Sprint's wireless network, along with telephone numbers on Sprint's network for use with that airtime, to OMobile (the "Xtreme-OMobile Agreement").

20.     Under the terms of the Xtreme-OMobile Agreement, OMobile agreed to pay Xtreme for each increment of airtime, and the telephone number linked to that airtime, at the time that the purchasing consumer activated the telephone with which that airtime and telephone number were bundled and at the time the consumer purchased additional airtime for any such phone.

21.     The parties further agreed that each week, Xtreme would deliver to OMobile on Monday an invoice reflecting the charges that became due and owing as a result of the prior week's activations and airtime purchases and that OMobile would then wire the invoiced funds to Xtreme's bank account in the State of New York by the close of business on Wednesday.

22.     The Xtreme-OMobile Agreement further provided to Xtreme the right to terminate immediately OMobile's account in the event that OMobile failed to make payment to Xtreme for any week in accordance with the contractual terms.

23.     OMobile made full payment to Xtreme under the first weekly invoice (for $59,127.75) that Xtreme delivered to OMobile under the parties' agreement.

24.     OMobile did not pay all of the sums reflected in the second weekly invoice for $70,690.56. OMobile paid $70,000 towards that invoice, leaving the sum of $690.56 unpaid.

25.     OMobile failed to make any payment to Xtreme under either of the subsequent two invoices from Xtreme.

26.    The amount due and owing from OMobile to Xtreme under the two completely unpaid invoices is $139,327.78.

27.    The amount due and owing from OMobile to Xtreme for charges incurred under the Xtreme-OMobile agreement is $140,018.34 ($139,327.78 plus $690.56).

28.    OMobile has failed to pay any part of that $140,018.34 sum to Xtreme, despite due demand.

29.    OMobile has repeatedly acknowledged its debt to Xtreme, but has failed to pay the amounts due and owing.  Under the parties' agreement, the entire amount of the $140,018.34 is due and payable to Xtreme immediately.

30.    Accordingly, OMobile is liable to Xtreme for breach of contract.

31.    As a result of such breach, Xtreme has been damaged in the amount of $140,018.34 plus interest.

### THIRD CAUSE OF ACTION

### (Quantum Meruit, Restitution)

32.    Xtreme repeats and realleges paragraphs 1 to 31 above as if set forth fully and at length herein.

33.    OMobile was unjustly enriched by receiving the airtime and telephone numbers for resale without paying Xtreme for them.

34.    Equity and good conscience demand that OMobile make restitution to Xtreme in quantum meruit for the amount by which it was unjustly enriched.

35.    Accordingly, OMobile is liable to Xtreme for damages in the amount of at least $215,018.34 plus interest.

WHEREFORE, Xtreme demands judgment against OMobile as follows:

(1)    on its first cause of action, in the amount of $75,000 plus interest;

(2)    on its second cause of action, in the amount of $140,018.34 plus interest;

(3)    on its third cause of action, in the amount of at least $215,018.34 plus interest;

(4)    Awarding Xtreme its costs and expenses, including reasonable attorneys' fees;

and

(5)    for such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         September 12, 2007

                              COHEN & GRESSER LLP

                              By:_____
                                 Lawrence T. Gresser
                                 Karen H. Bromberg
                                 Harvey B. Silikovitz
                                 100 Park Avenue, 23rd Floor
                                 New York, New York 10017
                                 (212) 957-7600

                              *Attorneys for Plaintiff Xtreme Mobile Inc.*

# EXHIBIT B

ALLYN & FORTUNA, LLP
Nicholas Fortuna (NF 9191)
Jesse A. Kaplan (JK 4594)
Attorneys for Defendant
*DETROIT PHONE CARDS INC. D/B/A OMOBILE*
200 Madison Avenue, 5th floor
New York, New York, 10016-3903
Ph: (212) 213-8844
Fax: (212) 213-3318

**UNITED STATES DISTRICT COURT,**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X

XTREME MOBILE INC.,                                **Docket No.: 07 CV 9528**

                    Plaintiff,

          -against-

DETROIT PHONE CARDS INC. D/B/A
OMOBILE,

                    Defendant.
-----------------------------------------------------------------X

## ANSWER OF DEFENDANT DETROIT PHONE CARDS INC., D/B/A OMOBILE

Defendant Detroit Phone Cards Inc., d/b/a Omobile ("Omobile") by its attorneys Allyn &

Fortuna LLP, hereby answers the complaint of Xtreme Mobile, Inc. ("Extreme") as follows:

1.       Defendant lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph "1" of the plaintiff's complaint.

2.       Defendant admits that it is a foreign corporation and that through Omobile, it sells

prepaid wireless telephones throughout the United States, but denies all other allegations of

paragraph "2" of the plaintiff's complaint.

3.       Defendant denies all allegations of paragraph "3" of the plaintiff's complaint.

1

4.     Defendant incorporates all prior responses in its response to paragraph "4" of plaintiff's Complaint.

5.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph "5" of the plaintiff's complaint.

6.     Defendant admits that Omobile entered into an agreement with Phonetec, that Omobile purchased airtime from Phonetec, and that Omobile sold airtime and telephone numbers with Omobile branded wireless telephones to consumers, but denies all other allegations of paragraph "6" of the plaintiff's complaint.

7.     Defendant admits that there was a valid and enforceable agreement between Phonetec and Omobile.

8.     Defendant denies all allegations of paragraph "8" of the plaintiff's complaint.

9.     Defendant denies all allegations of paragraph "9" of the plaintiff's complaint.

10.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph "10" of the plaintiff's complaint.

11.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph "11" of the plaintiff's complaint.

12.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph "12" of the plaintiff's complaint.

13.     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph "13" of the plaintiff's complaint.

14.     Defendant denies all allegations of paragraph "14" of the plaintiff's complaint.

15.     Defendant denies all allegations of paragraph "15" of the plaintiff's complaint.

16.     Defendant denies all allegations of paragraphs "16" of the plaintiff's complaint.

17.    Defendant denies all allegations of paragraph "17" of the plaintiff's complaint.

18.    Defendant incorporates all prior responses in its response to paragraph "18" of the plaintiff's complaint.

19.    Defendant denies all allegations of paragraph "19" of the plaintiff's complaint.

20.    Defendant denies all allegations of paragraphs "20" of the plaintiff's complaint.

21.    Defendant denies all allegations of paragraph "21" of the plaintiff's complaint.

22.    Defendant denies all allegations of paragraph "22" of the plaintiff's complaint.

23.    Defendant admits that Omobile made full payment under an invoice issued by Xtreme notwithstanding the fact that it was not required to, but denies all other allegations of paragraph "23" of the plaintiff's complaint.

24.    Defendant admits that Omobile made partial payment under an invoice issued by Xtreme notwithstanding the fact that it was not required to, but denies all other allegations of paragraph "24" of the plaintiff's complaint.

25.    Defendant admits that Omobile did not was not required to make payment to Xtreme under subsequent invoices.

26.    Defendant denies all allegations of paragraph "26" of the plaintiff's complaint.

27.    Defendant denies all allegations of paragraph "27" of the plaintiff's complaint.

28.    Defendant denies all allegations of paragraph "28" of the plaintiff's complaint as that amount of money is not owed.

29.    Defendant denies all allegations of paragraph "29" of the plaintiff's complaint.

30.    Defendant denies all allegations of paragraph "30" of the plaintiff's complaint.

31.    Defendant denies all allegations of paragraph "31" of the plaintiff's complaint.

3

32.     Defendant incorporates all prior responses in its response to paragraph "32" of the plaintiff's complaint.

33.     Defendant denies all allegations of paragraph "33" of the plaintiff's complaint.

34.     Defendant denies all allegations of paragraph "34" of the plaintiff's complaint.

35.     Defendant denies all allegations of paragraph "35" of the plaintiff's complaint.

## FIRST AFFIRMATIVE DEFENSE

36.     The complaint fails to state a cause of action against the answering defendant upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

37.     Plaintiff's claims are barred by the doctrines of waiver.

## THIRD AFFIRMATIVE DEFENSE

38.     Plaintiff's claims are barred by the doctrines of estoppel.

## FOURTH AFFIRMATIVE DEFENSE

39.     Plaintiff's claims are barred by the doctrines of laches.

## FIFTH AFFIRMATIVE DEFENSE

40.     Plaintiff's claims are barred by the statute of limitations.

## SIXTH AFFIRMATIVE DEFENSE

41.     Plaintiffs' claims are barred by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

42.     Plaintiff's claims are barred by the statute of frauds.

## EIGTH AFFIRMATIVE DEFENSE

43.     The plaintiff lacks personal jurisdiction over the defendant.

## NINTH AFFIRMATIVE DEFENSE

44.     Venue is improper.

## TENTH AFFIRMATIVE DEFENSE

45.     The plaintiff lacks standing to assert its claims against the defendant.

## ELEVENTH AFFIRMATIVE DEFENSE

46.     Defendant is not in privity of contract with defendant.

## TWELFTH AFFIRMATIVE DEFENSE

47.     There was no valid assignment of Phonetec's alleged claims against the defendant.

## THIRTEENTH AFFIRMATIVE DEFENSE

48.     The contractual provisions alleged by the plaintiff are not supported by consideration.

## FOURTEENTH AFFIRMATIVE DEFENSE

49.     The plaintiff's claims are barred as Phonetec, LP is in breach of contract with the defendant.

## FIFTEENTH AFFIRMATIVE DEFENSE

50.     To the extent that there was a contract between plaintiff and the defendant and/or the plaintiff assumed any obligations under any other contract with the defendant, plaintiff is in breach of contract.

## SIXTEENTH AFFIRMATIVE DEFENSE

51.     To the extent that there was a contract between plaintiff and the defendant and/or the plaintiff assumed any obligations under any other contract with the defendant, plaintiff failed to perform and/or satisfy a condition precedent to the contract.

## SEVENTEENTH AFFIRMATIVE DEFENSE

52.    The defendant is entitled to recoupment and/or setoff for goods and services that were charged to the defendant at an amount above any agreed upon price, as well as goods and services that were not actually provided to the defendant, and were not credited to the defendant or reimbursed to the defendant. Accordingly, the plaintiff's claims should be reduced by those amounts.

## EIGHTEENTH AFFIRMATIVE DEFENSE

53.    The defendant is entitled to recoupment and/or setoff for amounts owed to defendant by Phonetec. Accordingly, the plaintiff's claims should be reduced by those amounts.

## NINETEENTH AFFIRMATIVE DEFENSE

54.    To the extent that there was a contract between plaintiff and the defendant and/or the plaintiff assumed any obligations under any other contract with the defendant, defendant is entitled to recoupment and/or setoff for any damages caused by plaintiff's breach. Accordingly, the plaintiff's claims should be reduced by those amounts.

## TWENTIETH AFFIRMATIVE DEFENSE

55.    The defendant is entitled to recoupment and/or setoff for plaintiff's tortious conduct, including but not limited to Federal trademark, unfair competition, and false advertising violations. Accordingly, the plaintiff's claims should be reduced by those amounts.

**WHEREFORE,** the defendant Detroit Phone Cards Inc., d/b/a Omobile, respectfully requests that the Court issue a judgment in favor of defendant and against plaintiff as follows:

1.    Dismissing the complaint in its entirety;

2.    Awarding costs and reasonable attorneys' fees for the costs incurred in defending the instant action;

3.    Awarding such further relief as this court deems proper.

## JURY TRIAL DEMANDED

Omobile, by and through counsel, hereby requests a trial jury in the above-

captioned matter

Dated: November 14, 2007
       New York, New York

                                    Respectfully submitted,

                                    ALLYN & FORTUNA LLP

                                    By: _____
                                    Nicholas Fortuna, Esq. (9191)
                                    Jesse A. Kaplan, Esq. (4594)
                                    200 Madison Avenue, 5th Floor
                                    New York, New York 10016
                                    (212) 213-8844
                                    (212) 213-3318 (facsimile)

7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Answer was served by E.C.F. and

Federal Express, on the 14th day of November, 2007 on the following:

Harvey B. Silikovitz
Cohen & Gresser LLP
100 Park Avenue
New York, New York 10017
(212) 957-7600


Nicholas Fortuna

8

# EXHIBIT C

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

XTREME MOBILE INC,
                            Plaintiff(s),
         -against-

DETROIT PHONE CARDS INC.
D/B/A OMOBILE,          Defendant(s).
--------------------------------------------------------x

07 Civ. 9528 (HB)

**PROPOSED PRETRIAL
SCHEDULING ORDER**

APPEARANCES:

Plaintiff(s) by:    Karen H. Bromberg
                    COHEN & GRESSER LLP          Kathryn Barcoft
                                                 COHEN & GRESSER LLP

Defendant(s) by:    Nicholas Fortuna
                    ALLYN & FORTUNA LLP

HAROLD BAER, Jr., District Judge:

        Do the parties consent to proceed before a United States Magistrate for all purposes,
pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73?

                        Yes ___ No _X_

        Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, after holding an
initial pretrial conference on notice to all parties, it is hereby ordered that:

        Except under circumstances agreed to by the Court:

        1. This case is added to the ~~January~~ FEB 2009 Trailing Trial Calendar.
Jury _✓_. Non-Jury ___. Estimated number of trial days is _7_. Counsel should not make any
other commitments during this month. As a general rule, all cases will be tried within a
reasonable time from the date of this pretrial conference based on the complexity of the case.

        2. No additional parties may be joined after _April 3, 2008_, _____.

        New parties shall be bound by the deadlines included in this Pretrial Scheduling Order. If
new parties are joined, the party joining them shall forward to them a copy of this Pretrial
Scheduling Order and provide them with access to all previously taken discovery. Should this
pose a seemingly insurmountable problem, call Chambers.

        3. No additional causes of action or defenses may be asserted after _April 3_, _____,
_2008_.

        4. **Discovery:** All discovery, except for expert discovery, shall be commenced in
time to be completed by _July 31, 2008_, _____. Disclosure of expert testimony, if any, will be
made at least 45 days before the agreed to trial month. Evidence intended to contradict or rebut
the subject matter of the expert testimony will be submitted within 21 calendar days after the

disclosure made by the other party, subject only to further order of this Court. As the Court rarely grants extensions, any delays or disputes in the taking of discovery should be reported to the Court immediately.

If applicable, decisions with respect to disclosure and discovery of electronically stored information, along with privilege issues related to that information, shall be provided to the Court within **10 days** of this Order.

5. **Motions:**    No party may make a dispositive motion returnable after October 15, 2008 . Either party may request (and will be given a date by Chambers) for oral argument. The above date is the date by which any motion shall be fully briefed (i.e., moving, opposition and reply papers) and a courtesy copy delivered to Chambers.

In deciding the last date to submit fully briefed motions and your agreed to trial month, keep in mind that the Court requires at least **60 days** to decide dispositive motions.

6. **Joint Pretrial Order:** A joint pretrial order shall, unless waived by the Court, be submitted by December 19     , 2008     . The pretrial order shall conform to the Court's Individual Practice and Rules. Counsel may inquire of Chambers with respect to the filing date(s) for requests to charge, proposed voir dire, and motions in limine, but in no event are they to be submitted less than five (5) business days (fully briefed) before the date set for trial.

7. The law clerk assigned to this case is *Anna Gercas*, to whom all correspondence should be directed.

8. Upon request to Chambers by either side, the Court will schedule and conduct a settlement conference and/or mediation. The Court will also, upon request, facilitate mediation under the Court Mediation Program or a settlement conference before your Magistrate Judge. In the case of a mediation to be conducted by the Court, all parties must bring their respective clients to the mediation. Keep in mind, closure, for the most part, is accomplished in direct proportion to how early in the litigation the mediation occurs. Any ADR procedure must occur within the framework of this order.

9. Whenever a case is resolved, the parties must submit an Order of Discontinuance, signed by all parties before the case will be removed from the trial calendar. When the parties settle within forty-eight hours of trial or the filing of a dispositive motion, they **must** notify the Court immediately of such settlement, and fax to the Court no less than thirty-six hours prior to their planned appearance, an Order of Discontinuance (copy attached), signed by all parties.

10.  The parties' signatures below represent their understanding and agreement that this schedule is final and binding upon them unless the Court concludes that extraordinary circumstances warrant an extension with respect to one or more than one of the scheduled dates.

_Kathryn Barcroft_ (KB 7700)
For Plaintiff  Xteme Mobile, Inc.
Kathryn Barcroft  (KB 7700)

_signature_ (9191)
For Defendant  Detroit Phone Cards, Inc.
Nicholas Fortuna (9191)

_Kevin H. Birmberg_ (2153)
For Plaintiff  Xteme Mobile, Inc.

For Defendant

SO ORDERED,

DATED:          New York, New York

         1/27/08

_signature_

HAROLD BAER, JR.
United States District Judge

Rev. 2/07

# EXHIBIT D

## Kathryn Barcroft

| | |
|---|---|
| **From:** | Kathryn Barcroft |
| **Sent:** | Friday, March 21, 2008 6:26 PM |
| **To:** | 'Nick Fortuna' |
| **Cc:** | Karen Bromberg |
| **Subject:** | FW: 00027385 |
| **Attachments:** | 00027385.DOC |

Nick,

We are attaching our proposed Amended Complaint for your consent to file. We would like to file this as soon as possible with the Court given the deadline to amend our claims. Given your failure to respond to any sort of meaningful settlement discussion or to comment on the agreement we sent over to you, we are proceeding with our amended claims.

- Katie


**COHEN & GRESSER** LLP

Kathryn Barcroft
Cohen & Gresser LLP
100 Park Avenue
New York, New York 10017
212 957 7077 phone
212 957 4514 fax
www.cohengresser.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail may be confidential and/or privileged. This e-mail is intended to be reviewed initially by only the individual named above. If the reader of this e-mail is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this e-mail or the information contained herein is prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone and permanently delete this e-mail. Thank you.

3/25/2008

# EXHIBIT E

## Kathryn Barcroft

| | |
|---|---|
| **From:** | Kathryn Barcroft |
| **Sent:** | Tuesday, March 25, 2008 12:13 PM |
| **To:** | 'Nick Fortuna' |
| **Cc:** | Karen Bromberg |
| **Subject:** | Xtreme v. OMobile |

Nick,

If we do not hear back from you by the end of the day today, we will immediately file a motion to amend our complaint and note your failure to respond to our requests that you consent to the amendment.  Given the April 3 deadline for amendments, we cannot delay any further.

Katie

---

**From:** Kathryn Barcroft
**Sent:** Friday, March 21, 2008 6:26 PM
**To:** 'Nick Fortuna'
**Cc:** Karen Bromberg
**Subject:** FW: 00027385

Nick,

We are attaching our proposed Amended Complaint for your consent to file. We would like to file this as soon as possible with the Court given the deadline to amend our claims. Given your failure to respond to any sort of meaningful settlement discussion or to comment on the agreement we sent over to you, we are proceeding with our amended claims.

- Katie

## COHEN & GRESSER LLP

Kathryn Barcroft
Cohen & Gresser LLP
100 Park Avenue
New York, New York 10017
212 957 7077 phone
212 957 4514 fax
www.cohengresser.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail may be confidential and/or privileged. This e-mail is intended to be reviewed initially by only the individual named above. If the reader of this e-mail is not the intended recipient or a representative of the intended recipient, you are hereby notified that any review, dissemination or copying of this e-mail or the information contained herein is prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone and permanently delete this e-mail. Thank you.

3/27/2008

# EXHIBIT F

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
XTREME MOBILE INC.,                                    :    **ECF CASE**
                                                       :    (Electronically Filed)
                            Plaintiff,                 :
                                                       :    07 Civ. 9528 (HB)
              -against-                                :
                                                       :
DETROIT PHONE CARDS INC. D/B/A                         :    **FIRST AMENDED COMPLAINT**
OMOBILE AND RAMI CHAHINE,                              :
                                                       :    **Jury Trial Demanded**
                            Defendants.                :
                                                       :
------------------------------------------------------------------x

      Xtreme Mobile Inc. ("Xtreme"), by its attorneys Cohen & Gresser LLP, for its First

Amended Complaint against Detroit Phone Cards Inc. d/b/a OMobile ("OMobile") and Rami

Chahine ("Chahine") (collectively, "Defendants"), alleges on personal knowledge as to matters

relating to itself and on information and belief as to all other matters, as follows:

## PARTIES

      1.     Plaintiff Xtreme is a corporation organized and existing under the laws of the

State of Delaware, which is registered to do business in New York.  Xtreme sells prepaid

wireless telephones (*i.e.*, phones for which the purchase price includes prepaid calling minutes,

or "airtime," and pre-assigned telephone numbers that are linked to those minutes).  Xtreme

purchases the airtime and numbers for those phones from wireless carriers, and bundles them for

sale with the telephone equipment.

      2.     Defendant OMobile is a corporation organized and existing under the laws of the

State of Michigan with its principal place of business located in the State of Michigan.

According to its website, located at www.omobilepcs.com, OMobile also sells prepaid wireless

telephones through dealers throughout the United States, including numerous retailers in the State of New York.

3.      Defendant Chahine is an individual who is a citizen of the State of Michigan. At all relevant times, Chahine was the President of OMobile.

## JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over OMobile pursuant to CPLR §§ 301 and 302 because, among other things, OMobile regularly does business in the State of New York; many of the transactions of business giving rise to this lawsuit occurred in the State of New York; and OMobile specifically transacted business with Xtreme in the State of New York.

5.      This Court has personal jurisdiction over Chahine pursuant to CPLR § 302 because, among other things, he committed tortious acts within the State of New York.

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as a result of the diversity in citizenship of the parties and the amount in controversy which exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Xtreme has asserted claims arising under the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### The Phonetec-OMobile Agreement and the Assignment to Xtreme

8.      Sprint Spectrum LP ("Sprint") and Phonetec, LP ("Phonetec"), who are not parties to this action, entered into a Mobile Virtual Network Operator ("MVNO") agreement

under which Sprint sold to Phonetec airtime and telephone numbers on Sprint's wireless network, to be resold for use with prepaid wireless telephones (the "Sprint-Phonetec Agreement").

9.    Pursuant to that agreement, Phonetec, acting as an MVNO, resold some of that airtime (and the linked telephone numbers) to defendant OMobile pursuant to a separate agreement (the "Phonetec-OMobile Agreement"). OMobile, in turn, resold the airtime and telephone numbers, bundled with OMobile branded prepaid wireless telephones, to consumers.

10.    OMobile, however, failed to pay Phonetec all of the accrued charges for the airtime and telephone numbers that OMobile purchased from Phonetec. OMobile owes several hundred thousand dollars pursuant to unpaid invoices for that airtime (and the linked telephone numbers).

11.    In or about July 2007, in exchange for valuable consideration, Phonetec assigned to Xtreme certain of its rights and obligations under the Sprint-Phonetec Agreement and certain other assets of Phonetec (the "Assignment").

12.    Among the rights that Xtreme acquired pursuant to the Assignment was the right to receive $75,000 of the several hundred thousand dollars in receivables that OMobile owed to Phonetec for unpaid invoices.

13.    Also as a result of the Assignment, Xtreme replaced Phonetec as a Sprint MVNO under the Sprint-Phonetec Agreement.

**The Xtreme-OMobile Agreement**

14.    Subsequent to the Assignment, Xtreme also dealt directly with OMobile and entered into an agreement to sell airtime on Sprint's wireless network, along with telephone

numbers on Sprint's network for use with that airtime, to OMobile (the "Xtreme-OMobile Agreement").

15.    Under the terms of the Xtreme-OMobile Agreement, OMobile acted as an agent to sell airtime on Xtreme's behalf, and agreed to pay Xtreme for each increment of airtime, and the telephone number linked to that airtime, at the time that the purchasing consumer activated the telephone with which that airtime and telephone number were bundled and at the time the consumer purchased additional airtime for any such phone.

16.    Because OMobile was acting as Xtreme's agent, although OMobile marketed the airtime under the OMobile brand, the consumers who purchased the airtime became subscribers belonging to Xtreme.

17.    The parties further agreed that each week, Xtreme would deliver to OMobile on Monday an invoice reflecting the charges that became due and owing as a result of the prior week's activations and airtime purchases and that OMobile would then wire the invoiced funds to Xtreme's bank account in the State of New York by the close of business on Wednesday.

18.    The Xtreme-OMobile Agreement further provided to Xtreme the right to terminate immediately OMobile's account in the event that OMobile failed to make payment to Xtreme for any week in accordance with the contractual terms.

19.    OMobile made full payment to Xtreme under the first weekly invoice (for $59,127.75) that Xtreme delivered to OMobile under the parties' agreement.

20.    OMobile did not pay all of the sums reflected in the second weekly invoice for $70,690.56. OMobile paid $70,000 towards that invoice, leaving the sum of $690.56 unpaid.

21.    OMobile failed to make any payment to Xtreme under either of the subsequent two invoices from Xtreme.

22.     The amount due and owing from OMobile to Xtreme under the two completely
unpaid invoices is $139,327.78 plus interest.

23.     The amount due and owing from OMobile to Xtreme for charges incurred under
the Xtreme-OMobile agreement is $140,018.34 ($139,327.78 plus $690.56) plus interest.

24.     OMobile has failed to pay any part of that $140,018.34 sum to Xtreme, despite
due demand.

25.     Due to OMobile's nonpayment of current invoices and nonpayment of pre-
existing receivables that Phonetec had assigned to Xtreme, Xtreme exercised its contractual right
to terminate OMobile's service and to prevent OMobile from loading new OMobile branded
plans of Xtreme airtime on OMobile telephones.

**OMobile's theft of Xtreme's subscribers and other tortious conduct**

26.     Upon the contractually authorized termination of OMobile's service, Chahine,
and/or employees or agents of OMobile acting under his direction, undertook a campaign of
unlawful and/or unauthorized actions to wrongfully terminate Xtreme subscriber accounts and to
attempt to unlawfully transfer the subscribers and their mobile telephone handsets to the control
of another MVNO. All of those actions were performed within the scope of Chahine's position
as President of OMobile.

27.     For example, Xtreme maintained an online platform known as PACE to maintain
the accounts for its subscribers. Chahine, and/or employees or agents under his direction,
utilized a login username and password to that platform that belonged to one of Xtreme's
distributors to manually deactivate in excess of 1,000 subscribers from the Xtreme MVNO
account with Sprint and to move control of those subscribers' wireless telephone handsets from
Xtreme's PACE platform to the platform of another MVNO ZefComm LLC, d/b/a/ Telispre

("Telispire'). Defendants had no authorization to use this login username and password, and had no authorization to access Xtreme's PACE platform.

28.    Defendants' illegal effort to deactivate subscribers from Xtreme's MVNO account with Sprint, and to move control of their telephone handsets to the platform of another MVNO, was successful until Xtreme's technical personnel identified the unauthorized activity and terminated the account deactivation being undertaken by Defendants.

29.    While wrongfully accessing Xtreme's PACE platform, Chahine, and/or employees or agents under his direction, wrongfully downloaded subscriber data and other proprietary information from the platform that concerned Xtreme's subscribers and their wireless telephone handsets, and then used that data and proprietary information to contact dealers and customers in an effort to transfer the customers accounts to Telispire by mis-stating the facts and circumstances of the customer's service deactivation, among other fraudulent practices.

30.    Chahine, and/or employees or agents under his direction, also made numerous false and fraudulent misrepresentations, in or about September and October 2007, to dealers about the reasons why their telephones were not working, including: that Xtreme was going out of business; that Sprint was shutting down Xtreme; that all Xtreme phones would be disconnected; that OMobile had its own Sprint MVNO agreement; that the only way for customers to continue to use their wireless telephones was to obtain new PIN numbers from OMobile, which Chahine would activate through a relationship with another Sprint MVNO reseller.  All of these statements were complete fabrications and were made with the intent of interfering with Xtreme's relationships with its subscribers and its dealers and damaging the reputation of Xtreme in the marketplace, leading to a lack of dealer confidence not only terminating existing business relationships of Xtreme, but preventing Xtreme from establishing

new subscriber accounts. Dealers informed Xtreme about these false and fraudulent statements. The false and fraudulent statements were made by Chahine and/or employees or agents under his direction by phone, in person, and possibly by fax and e-mail.

31.    Chahine, and/or employees or agents under his direction, also conducted an organized program to pressure dealers to deactivate wireless telephones that were linked to Xtreme's MVNO accounts – offering to reward dealers with free wireless airtime if they successfully caused customers to deactivate their accounts with Xtreme and reactivate Telispire. For example, OMobile's customer service freely distributed written detailed instructions about this process – including a fax containing "dummy" telephone ESN serial numbers, which would be used, as instructed by Defendants, to transfer a customer's mobile phone number to a ficticous phone handset and then re-activate the customer's handset with a new mobile number established by Defendants through Telispire.

## COUNT I

### (Breach of Contract, against OMobile)

32.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 31 above as if set forth fully and at length herein.

33.    The Phonetec-OMobile Agreement is valid and enforceable.

34.    Phonetec performed all of its obligations to OMobile under the Phonetec-OMobile Agreement.

35.    The Assignment, pursuant to which Phonetec assigned to Xtreme certain of its rights and obligations under the Sprint-Phonetec Agreement, is valid and enforceable.

36.    Xtreme performed all of its obligations under the Assignment.

37.     As a result of the Assignment, together with the obligations that OMobile assumed under the Phonetec-Mobile Agreement, OMobile owes to Xtreme the sum of $75,000 plus interest.

38.     OMobile has failed to pay any part of that $75,000 sum, despite repeated demands by Xtreme.

39.     Accordingly, OMobile is liable to Xtreme for breach of contract.

40.     As a result of such breach, Xtreme has been damaged in the amount of $75,000 plus interest.

## COUNT II

### (Breach of Contract, against OMobile)

41.     Xtreme repeats and realleges the statements set forth in paragraphs 1 to 40 above as if set forth fully and at length herein.

42.     OMobile has repeatedly acknowledged its debt to Xtreme, but has failed to pay the amounts due and owing.  Under the parties' agreement, the entire amount of the $140,018.34 is due and payable to Xtreme immediately.

43.     Accordingly, OMobile is liable to Xtreme for breach of contract.

44.     As a result of such breach, Xtreme has been damaged in the amount of $140,018.34 plus interest.

## COUNT III

### (Quantum Meruit, Restitution against OMobile)

45.     Xtreme repeats and realleges the statements set forth in paragraphs 1 to 44 above as if set forth fully and at length herein.

46.     OMobile was unjustly enriched by receiving the airtime and telephone numbers for resale without paying Xtreme for them.

47.     Equity and good conscience demand that OMobile make restitution to Xtreme in quantum meruit for the amount by which it was unjustly enriched.

48.     Accordingly, OMobile is liable to Xtreme for damages in the amount of at least $215,018.34 plus interest.

## COUNT IV

### (Defamation, against OMobile and Chahine)

49.     Xtreme repeats and realleges the statements set forth in paragraphs 1 to 48 above as if set forth fully and at length herein.

50.     After Xtreme exercised its contractual right to terminate OMobile's service and to prevent OMobile from loading new OMobile branded plans of Xtreme airtime on OMobile telephones, Chahine, and/or other employees or agents of OMobile acting under his direction, made numerous false and fraudulent misrepresentations, in or about September and October 2007, to third party dealers about the reasons why their telephones were not working.  Among those false and fraudulent statements, made by phone, in person, and possibly by facsimile and e-mail, and which Defendants knew to be false, were the following:

- That Xtreme was going out of business;

- That Sprint was "shutting down" Xtreme;

- That all telephones sold pursuant to Xtreme's MVNO agreement would be "disconnected";

- That OMobile had its own Sprint MVNO agreement; and

●     That the only way for Xtreme's customers to use their mobile telephones was to obtain new PIN numbers and airtime from OMobile, which Chahine would activate through a relationship with another reseller of PINs and airtime under a Sprint MVNO agreement.

51.    These false statements had a deleterious impact on Xtreme's relationships with existing customers. They also damaged Xtreme's reputation in the marketplace and adversely affected its marketing efforts.

52.    As a result, Xtreme was damaged in an amount to be determined at trial.

53.    Accordingly, Defendants are jointly and severally liable to Xtreme for defamation.

## COUNT V

### (Tortious Interference with Contractual Relations, against OMobile and Chahine)

54.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 53 above as if set forth fully and at length herein.

55.    Defendants were aware of the existence of contractual relationships between Xtreme and its customers.

56.    Defendants made the false and defamatory statements set forth above.

57.    Defendants, and/or employees or agents acting under their direction, also conducted an organized program to pressure dealers to deactivate the customers' mobile telephones that were linked to Xtreme MVNO accounts, as set forth above.

58.    Defendants intended to induce the dealers and customers to breach their agreements with Xtreme.

59.     As a result of Defendants' conduct, a number of Xtreme's customers were induced to breach their contracts with Xtreme and activate accounts with OMobile's new reseller.

60.     Many other customers were prevented from performing their agreements with Xtreme as a result of Defendants' improper, and illegal, manual deactivation of their accounts, which Defendants accomplished by their unauthorized access to the Xtreme online platform.

61.     Defendants' interference with Xtreme's agreements with third parties was malicious and without justification, and was accomplished by dishonesty, defamation, and other wrongful means and illegal conduct.

62.     As a result of Defendants' tortious interference with Xtreme's contractual relationships, Xtreme was damaged in an amount to be determined at trial.

**COUNT VI**

**(Tortious Interference with Business Relations, against Both Defendants)**

63.     Xtreme repeats and realleges the statements set forth in paragraphs 1 to 62 above as if set forth fully and at length herein.

64.     But for the interference set forth above, some of Xtreme's dealers and subscribers would have renewed their agreements with Xtreme or entered into new agreements with it.

65.     Defendants' interference with Xtreme's business relations with third parties was malicious and without justification, and was accomplished by dishonesty, defamation, and other wrongful means and illegal conduct.

66.     As a result of Defendants' tortious interference with Xtreme's business relations, Xtreme was damaged in an amount to be determined at trial.

## COUNT VII

### (Common Law Unfair Competition, against Both Defendants)

67.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 66 above as if set forth fully and at length herein.

68.    Defendants misappropriated, for their commercial advantage, benefits and property rights belonging to Xtreme.  They did so by, *inter alia*, engaging in the following wrongful, unlawful, and unauthorized conduct:

- Manually deactivating approximately 1,000 subscribers from Xtreme's MVNO account with Sprint to move the telephone handsets to another MVNO.

- Wrongfully downloading from Xtreme's platform subscriber data and other proprietary information concerning Xtreme's subscribers and their mobile telephone handsets, and then employing that information to damage Xtreme.

69.    As a result, Defendants are jointly and severally liable for unfair competition against Xtreme, for damages in an amount to be determined at trial.

## COUNT VIII

### (Common Law Conversion, against Both Defendants)

70.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 69 above as if set forth fully and at length herein.

71.    Xtreme has a right to possession of its subscriber data and other proprietary information concerning its subscribers and their mobile handsets that is superior to Defendants'

possessory interest in such data and information. In fact, Defendants have no right whatsoever to possess such data or information.

72.    By downloading such data and information from Xtreme's platform, Defendants converted it.

73.    As a result, Defendants are jointly and severally liable to Xtreme for damages in an amount to be determined at trial.

## COUNT IX

### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Both Defendants)

74.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 73 above as if set forth fully and at length herein.

75.    Xtreme's online platform was a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(1) and (2).

76.    Defendants, knowingly and with intent to defraud, accessed Xtreme's online platform without authorization, and by means of such conduct furthered the intended fraud by stealing Xtreme's subscribers and downloading Xtreme's subscriber data and other proprietary information concerning its subscribers and their mobile handsets.

77.    Accordingly, Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

78.    As a proximate result of Defendants' violation of the CFAA, Xtreme suffered damages in excess of $5,000, including, but not limited to, loss of trade secrets, loss of business and loss of goodwill.

79.    As a result, Defendants are jointly and severally liable to Xtreme pursuant to 18 U.S.C. § 1030(g) for damages in an amount to be determined at trial.

## COUNT X

### (Violation of Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, against Both Defendants)

80.    Xtreme repeats and realleges the statements set forth in paragraphs 1 to 79 above as if set forth fully and at length herein.

81.    Xtreme's online platform was a facility through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701(a)(1).

82.    Defendants knowingly and intentionally accessed Xtreme's online platform without authorization

83.    Through such unauthorized access, Defendants obtained electronic communications.

84.    Accordingly, Defendants have violated the Stored Communications Act (Title II of the Electronic Communications Privacy Act), 18 U.S.C. § 2701(a)(1).

85.    As a result, Defendants are jointly and severally liable to Xtreme, pursuant to 18 U.S.C. § 2707 for damages in an amount to be determined at trial.  Pursuant to 18 U.S.C. § 2707(c), the damages recoverable by Xtreme include the sum of the damages suffered by Xtreme and the profits made by Defendants as a result of their violations.

86.    Because Defendants' conduct was willful and intentional, Xtreme is also entitled to punitive damages against Defendants pursuant to 18 U.S.C. § 2707 (c).

87.    Xtreme is also entitled, pursuant to 18 U.S.C. § 2707 (c), to recover from Defendants its reasonable attorneys' fees and other litigation costs reasonably incurred in connection with its prosecution of this action.

WHEREFORE, Xtreme demands a trial by jury and judgment as follows:

(1)    on Count I, against OMobile in the amount of $75,000 plus interest;

(2)    on Count II, against OMobile in the amount of $140,018.34 plus interest;

(3)    on Count III, against OMobile in the amount of at least $215,018.34 plus interest;

(4)    on Count IV, against Defendants, jointly and severally, in an amount to be determined at trial.

(5)    on Count V, against Defendants, jointly and severally, in an amount to be determined at trial.

(6)    on Count VI, against Defendants, jointly and severally, in an amount to be determined at trial.

(7)    on Count VII, against Defendants, jointly and severally, in an amount to be determined at trial.

(8)    on Count VIII, against Defendants, jointly and severally, in an amount to be determined at trial.

(9)    on Count IX, against Defendants, jointly and severally, in an amount to be determined at trial.

(10)    on Count X, against Defendants, jointly and severally, in an amount to be determined at trial, and to consist of the damages suffered by Xtreme in addition to the profits made by Defendants as a result of their violations of the Stored Communications Act, as well as punitive damages;

(11)    awarding Xtreme its costs and expenses, including reasonable attorneys' fees; and

(12)    for such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          March 27, 2008

                                        COHEN & GRESSER LLP


                                        By:_____/s/_____
                                            Karen H. Bromberg
                                            (kbromberg@cohengresser.com)
                                            Harvey B. Silikovitz
                                            (hsilikovitz@cohengresser.com)
                                            Kathryn L. Barcroft
                                            (kbarcroft@cohengresser.com)
                                        100 Park Avenue, 23rd Floor
                                        New York, New York  10017
                                        (212) 957-7600

                                        *Attorneys for Plaintiff Xtreme Mobile Inc.*