UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

XTREME MOBILE INC.,

             Plaintiff,

    -against-

DETROIT PHONE CARDS INC. D/B/A
OMOBILE AND RAMI CHAHINE,

             Defendants.

------------------------------------------------------------x

**ECF CASE**
(Electronically Filed)

07 Civ. 9528 (HB)

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

RECEIVED
MAY 08 2008
U.S.D.C. S.D. N.Y.
CASHIERS

Xtreme Mobile Inc. ("Xtreme"), by its attorneys Cohen & Gresser LLP, for its First Amended Complaint against Detroit Phone Cards Inc. d/b/a OMobile ("OMobile") and Rami Chahine ("Chahine") (collectively, "Defendants"), alleges on personal knowledge as to matters relating to itself and on information and belief as to all other matters, as follows:

## PARTIES

1.     Plaintiff Xtreme is a corporation organized and existing under the laws of the State of Delaware, which is registered to do business in New York. Xtreme sells prepaid wireless telephones (*i.e.*, phones for which the purchase price includes prepaid calling minutes, or "airtime," and pre-assigned telephone numbers that are linked to those minutes). Xtreme purchases the airtime and numbers for those phones from wireless carriers, and bundles them for sale with the telephone equipment.

2.     Defendant OMobile is a corporation organized and existing under the laws of the State of Michigan with its principal place of business located in the State of Michigan. According to its website, located at www.omobilepcs.com, OMobile also sells prepaid wireless

telephones through dealers throughout the United States, including numerous retailers in the State of New York.

3. Defendant Chahine is an individual who is a citizen of the State of Michigan. At all relevant times, Chahine was the President of OMobile.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over OMobile pursuant to CPLR §§ 301 and 302 because, among other things, OMobile regularly does business in the State of New York; many of the transactions of business giving rise to this lawsuit occurred in the State of New York; and OMobile specifically transacted business with Xtreme in the State of New York.

5. This Court has personal jurisdiction over Chahine pursuant to CPLR § 302 because, among other things, he committed tortious acts within the State of New York.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as a result of the diversity in citizenship of the parties and the amount in controversy which exceeds the sum or value of $75,000, exclusive of interest and costs. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Xtreme has asserted claims arising under the Computer Fraud & Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### The Phonetec-OMobile Agreement and the Assignment to Xtreme

8. Sprint Spectrum LP ("Sprint") and Phonetec, LP ("Phonetec"), who are not parties to this action, entered into a Mobile Virtual Network Operator ("MVNO") agreement

under which Sprint sold to Phonetec airtime and telephone numbers on Sprint's wireless network, to be resold for use with prepaid wireless telephones (the "Sprint-Phonetec Agreement").

9. Pursuant to that agreement, Phonetec, acting as an MVNO, resold some of that airtime (and the linked telephone numbers) to defendant OMobile pursuant to a separate agreement (the "Phonetec-OMobile Agreement"). OMobile, in turn, resold the airtime and telephone numbers, bundled with OMobile branded prepaid wireless telephones, to consumers.

10. OMobile, however, failed to pay Phonetec all of the accrued charges for the airtime and telephone numbers that OMobile purchased from Phonetec. OMobile owes several hundred thousand dollars pursuant to unpaid invoices for that airtime (and the linked telephone numbers).

11. In or about July 2007, in exchange for valuable consideration, Phonetec assigned to Xtreme certain of its rights and obligations under the Sprint-Phonetec Agreement and certain other assets of Phonetec (the "Assignment").

12. Among the rights that Xtreme acquired pursuant to the Assignment was the right to receive $75,000 of the several hundred thousand dollars in receivables that OMobile owed to Phonetec for unpaid invoices.

13. Also as a result of the Assignment, Xtreme replaced Phonetec as a Sprint MVNO under the Sprint-Phonetec Agreement.

**The Xtreme-OMobile Agreement**

14. Subsequent to the Assignment, Xtreme also dealt directly with OMobile and entered into an agreement to sell airtime on Sprint's wireless network, along with telephone

numbers on Sprint's network for use with that airtime, to OMobile (the "Xtreme-OMobile Agreement").

15. Under the terms of the Xtreme-OMobile Agreement, OMobile acted as an agent to sell airtime on Xtreme's behalf, and agreed to pay Xtreme for each increment of airtime, and the telephone number linked to that airtime, at the time that the purchasing consumer activated the telephone with which that airtime and telephone number were bundled and at the time the consumer purchased additional airtime for any such phone.

16. Because OMobile was acting as Xtreme's agent, although OMobile marketed the airtime under the OMobile brand, the consumers who purchased the airtime became subscribers belonging to Xtreme.

17. The parties further agreed that each week, Xtreme would deliver to OMobile on Monday an invoice reflecting the charges that became due and owing as a result of the prior week's activations and airtime purchases and that OMobile would then wire the invoiced funds to Xtreme's bank account in the State of New York by the close of business on Wednesday.

18. The Xtreme-OMobile Agreement further provided to Xtreme the right to terminate immediately OMobile's account in the event that OMobile failed to make payment to Xtreme for any week in accordance with the contractual terms.

19. OMobile made full payment to Xtreme under the first weekly invoice (for $59,127.75) that Xtreme delivered to OMobile under the parties' agreement.

20. OMobile did not pay all of the sums reflected in the second weekly invoice for $70,690.56. OMobile paid $70,000 towards that invoice, leaving the sum of $690.56 unpaid.

21. OMobile failed to make any payment to Xtreme under either of the subsequent two invoices from Xtreme.

22. The amount due and owing from OMobile to Xtreme under the two completely unpaid invoices is $139,327.78 plus interest.

23. The amount due and owing from OMobile to Xtreme for charges incurred under the Xtreme-OMobile agreement is $140,018.34 ($139,327.78 plus $690.56) plus interest.

24. OMobile has failed to pay any part of that $140,018.34 sum to Xtreme, despite due demand.

25. Due to OMobile's nonpayment of current invoices and nonpayment of pre-existing receivables that Phonetec had assigned to Xtreme, Xtreme exercised its contractual right to terminate OMobile's service and to prevent OMobile from loading new OMobile branded plans of Xtreme airtime on OMobile telephones.

**OMobile's theft of Xtreme's subscribers and other tortious conduct**

26. Upon the contractually authorized termination of OMobile's service, Chahine, and/or employees or agents of OMobile acting under his direction, undertook a campaign of unlawful and/or unauthorized actions to wrongfully terminate Xtreme subscriber accounts and to attempt to unlawfully transfer the subscribers and their mobile telephone handsets to the control of another MVNO. All of those actions were performed within the scope of Chahine's position as President of OMobile.

27. For example, Xtreme maintained an online platform known as PACE to maintain the accounts for its subscribers. Chahine, and/or employees or agents under his direction, utilized a login username and password to that platform that belonged to one of Xtreme's distributors to manually deactivate in excess of 1,000 subscribers from the Xtreme MVNO account with Sprint and to move control of those subscribers' wireless telephone handsets from Xtreme's PACE platform to the platform of another MVNO ZefComm LLC, d/b/a/ Telispre

("Telispire'). Defendants had no authorization to use this login username and password, and had no authorization to access Xtreme's PACE platform.

28. Defendants' illegal effort to deactivate subscribers from Xtreme's MVNO account with Sprint, and to move control of their telephone handsets to the platform of another MVNO, was successful until Xtreme's technical personnel identified the unauthorized activity and terminated the account deactivation being undertaken by Defendants.

29. While wrongfully accessing Xtreme's PACE platform, Chahine, and/or employees or agents under his direction, wrongfully downloaded subscriber data and other proprietary information from the platform that concerned Xtreme's subscribers and their wireless telephone handsets, and then used that data and proprietary information to contact dealers and customers in an effort to transfer the customers accounts to Telispire by mis-stating the facts and circumstances of the customer's service deactivation, among other fraudulent practices.

30. Chahine, and/or employees or agents under his direction, also made numerous false and fraudulent misrepresentations, in or about September and October 2007, to dealers about the reasons why their telephones were not working, including: that Xtreme was going out of business; that Sprint was shutting down Xtreme; that all Xtreme phones would be disconnected; that OMobile had its own Sprint MVNO agreement; that the only way for customers to continue to use their wireless telephones was to obtain new PIN numbers from OMobile, which Chahine would activate through a relationship with another Sprint MVNO reseller. All of these statements were complete fabrications and were made with the intent of interfering with Xtreme's relationships with its subscribers and its dealers and damaging the reputation of Xtreme in the marketplace, leading to a lack of dealer confidence not only terminating existing business relationships of Xtreme, but preventing Xtreme from establishing

new subscriber accounts. Dealers informed Xtreme about these false and fraudulent statements. The false and fraudulent statements were made by Chahine and/or employees or agents under his direction by phone, in person, and possibly by fax and e-mail.

31.  Chahine, and/or employees or agents under his direction, also conducted an organized program to pressure dealers to deactivate wireless telephones that were linked to Xtreme's MVNO accounts – offering to reward dealers with free wireless airtime if they successfully caused customers to deactivate their accounts with Xtreme and reactivate Telispire. For example, OMobile's customer service freely distributed written detailed instructions about this process – including a fax containing "dummy" telephone ESN serial numbers, which would be used, as instructed by Defendants, to transfer a customer's mobile phone number to a ficticous phone handset and then re-activate the customer's handset with a new mobile number established by Defendants through Telispire.

## COUNT I

### (Breach of Contract, against OMobile)

32.  Xtreme repeats and realleges the statements set forth in paragraphs 1 to 31 above as if set forth fully and at length herein.

33.  The Phonetec-OMobile Agreement is valid and enforceable.

34.  Phonetec performed all of its obligations to OMobile under the Phonetec-OMobile Agreement.

35.  The Assignment, pursuant to which Phonetec assigned to Xtreme certain of its rights and obligations under the Sprint-Phonetec Agreement, is valid and enforceable.

36.  Xtreme performed all of its obligations under the Assignment.

37. As a result of the Assignment, together with the obligations that OMobile assumed under the Phonetec-Mobile Agreement, OMobile owes to Xtreme the sum of $75,000 plus interest.

38. OMobile has failed to pay any part of that $75,000 sum, despite repeated demands by Xtreme.

39. Accordingly, OMobile is liable to Xtreme for breach of contract.

40. As a result of such breach, Xtreme has been damaged in the amount of $75,000 plus interest.

## COUNT II

### (Breach of Contract, against OMobile)

41. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 40 above as if set forth fully and at length herein.

42. OMobile has repeatedly acknowledged its debt to Xtreme, but has failed to pay the amounts due and owing. Under the parties' agreement, the entire amount of the $140,018.34 is due and payable to Xtreme immediately.

43. Accordingly, OMobile is liable to Xtreme for breach of contract.

44. As a result of such breach, Xtreme has been damaged in the amount of $140,018.34 plus interest.

## COUNT III

### (Quantum Meruit, Restitution against OMobile)

45. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 44 above as if set forth fully and at length herein.

46. OMobile was unjustly enriched by receiving the airtime and telephone numbers for resale without paying Xtreme for them.

47. Equity and good conscience demand that OMobile make restitution to Xtreme in quantum meruit for the amount by which it was unjustly enriched.

48. Accordingly, OMobile is liable to Xtreme for damages in the amount of at least $215,018.34 plus interest.

## COUNT IV

### (Defamation, against OMobile and Chahine)

49. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 48 above as if set forth fully and at length herein.

50. After Xtreme exercised its contractual right to terminate OMobile's service and to prevent OMobile from loading new OMobile branded plans of Xtreme airtime on OMobile telephones, Chahine, and/or other employees or agents of OMobile acting under his direction, made numerous false and fraudulent misrepresentations, in or about September and October 2007, to third party dealers about the reasons why their telephones were not working. Among those false and fraudulent statements, made by phone, in person, and possibly by facsimile and e-mail, and which Defendants knew to be false, were the following:

- That Xtreme was going out of business;
- That Sprint was "shutting down" Xtreme;
- That all telephones sold pursuant to Xtreme's MVNO agreement would be "disconnected";
- That OMobile had its own Sprint MVNO agreement; and

- That the only way for Xtreme's customers to use their mobile telephones was to obtain new PIN numbers and airtime from OMobile, which Chahine would activate through a relationship with another reseller of PINs and airtime under a Sprint MVNO agreement.

51. These false statements had a deleterious impact on Xtreme's relationships with existing customers. They also damaged Xtreme's reputation in the marketplace and adversely affected its marketing efforts.

52. As a result, Xtreme was damaged in an amount to be determined at trial.

53. Accordingly, Defendants are jointly and severally liable to Xtreme for defamation.

## COUNT V

**(Tortious Interference with Contractual Relations, against OMobile and Chahine)**

54. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 53 above as if set forth fully and at length herein.

55. Defendants were aware of the existence of contractual relationships between Xtreme and its customers.

56. Defendants made the false and defamatory statements set forth above.

57. Defendants, and/or employees or agents acting under their direction, also conducted an organized program to pressure dealers to deactivate the customers' mobile telephones that were linked to Xtreme MVNO accounts, as set forth above.

58. Defendants intended to induce the dealers and customers to breach their agreements with Xtreme.

59. As a result of Defendants' conduct, a number of Xtreme's customers were induced to breach their contracts with Xtreme and activate accounts with OMobile's new reseller.

60. Many other customers were prevented from performing their agreements with Xtreme as a result of Defendants' improper, and illegal, manual deactivation of their accounts, which Defendants accomplished by their unauthorized access to the Xtreme online platform.

61. Defendants' interference with Xtreme's agreements with third parties was malicious and without justification, and was accomplished by dishonesty, defamation, and other wrongful means and illegal conduct.

62. As a result of Defendants' tortious interference with Xtreme's contractual relationships, Xtreme was damaged in an amount to be determined at trial.

## COUNT VI

(Tortious Interference with Business Relations, against Both Defendants)

63. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 62 above as if set forth fully and at length herein.

64. But for the interference set forth above, some of Xtreme's dealers and subscribers would have renewed their agreements with Xtreme or entered into new agreements with it.

65. Defendants' interference with Xtreme's business relations with third parties was malicious and without justification, and was accomplished by dishonesty, defamation, and other wrongful means and illegal conduct.

66. As a result of Defendants' tortious interference with Xtreme's business relations, Xtreme was damaged in an amount to be determined at trial.

## COUNT VII

**(Common Law Unfair Competition, against Both Defendants)**

67. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 66 above as if set forth fully and at length herein.

68. Defendants misappropriated, for their commercial advantage, benefits and property rights belonging to Xtreme. They did so by, *inter alia*, engaging in the following wrongful, unlawful, and unauthorized conduct:

- Manually deactivating approximately 1,000 subscribers from Xtreme's MVNO account with Sprint to move the telephone handsets to another MVNO.

- Wrongfully downloading from Xtreme's platform subscriber data and other proprietary information concerning Xtreme's subscribers and their mobile telephone handsets, and then employing that information to damage Xtreme.

69. As a result, Defendants are jointly and severally liable for unfair competition against Xtreme, for damages in an amount to be determined at trial.

## COUNT VIII

**(Common Law Conversion, against Both Defendants)**

70. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 69 above as if set forth fully and at length herein.

71. Xtreme has a right to possession of its subscriber data and other proprietary information concerning its subscribers and their mobile handsets that is superior to Defendants'

possessory interest in such data and information. In fact, Defendants have no right whatsoever to possess such data or information.

72. By downloading such data and information from Xtreme's platform, Defendants converted it.

73. As a result, Defendants are jointly and severally liable to Xtreme for damages in an amount to be determined at trial.

## COUNT IX

### (Violation of Computer Fraud and Abuse Act, 18 U.S.C. § 1030, against Both Defendants)

74. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 73 above as if set forth fully and at length herein.

75. Xtreme's online platform was a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(1) and (2).

76. Defendants, knowingly and with intent to defraud, accessed Xtreme's online platform without authorization, and by means of such conduct furthered the intended fraud by stealing Xtreme's subscribers and downloading Xtreme's subscriber data and other proprietary information concerning its subscribers and their mobile handsets.

77. Accordingly, Defendants violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

78. As a proximate result of Defendants' violation of the CFAA, Xtreme suffered damages in excess of $5,000, including, but not limited to, loss of trade secrets, loss of business and loss of goodwill.

79. As a result, Defendants are jointly and severally liable to Xtreme pursuant to 18 U.S.C. § 1030(g) for damages in an amount to be determined at trial.

### COUNT X

**(Violation of Stored Communications Act, 18 U.S.C. § 2701, *et seq.*, against Both Defendants)**

80. Xtreme repeats and realleges the statements set forth in paragraphs 1 to 79 above as if set forth fully and at length herein.

81. Xtreme's online platform was a facility through which an electronic communication service is provided within the meaning of 18 U.S.C. § 2701(a)(1).

82. Defendants knowingly and intentionally accessed Xtreme's online platform without authorization

83. Through such unauthorized access, Defendants obtained electronic communications.

84. Accordingly, Defendants have violated the Stored Communications Act (Title II of the Electronic Communications Privacy Act), 18 U.S.C. § 2701(a)(1).

85. As a result, Defendants are jointly and severally liable to Xtreme, pursuant to 18 U.S.C. § 2707 for damages in an amount to be determined at trial. Pursuant to 18 U.S.C. § 2707(c), the damages recoverable by Xtreme include the sum of the damages suffered by Xtreme and the profits made by Defendants as a result of their violations.

86. Because Defendants' conduct was willful and intentional, Xtreme is also entitled to punitive damages against Defendants pursuant to 18 U.S.C. § 2707 (c).

87. Xtreme is also entitled, pursuant to 18 U.S.C. § 2707 (c), to recover from Defendants its reasonable attorneys' fees and other litigation costs reasonably incurred in connection with its prosecution of this action.

WHEREFORE, Xtreme demands a trial by jury and judgment as follows:

(1) on Count I, against OMobile in the amount of $75,000 plus interest;

(2)   on Count II, against OMobile in the amount of $140,018.34 plus interest;

(3)   on Count III, against OMobile in the amount of at least $215,018.34 plus interest;

(4)   on Count IV, against Defendants, jointly and severally, in an amount to be determined at trial.

(5)   on Count V, against Defendants, jointly and severally, in an amount to be determined at trial.

(6)   on Count VI, against Defendants, jointly and severally, in an amount to be determined at trial.

(7)   on Count VII, against Defendants, jointly and severally, in an amount to be determined at trial.

(8)   on Count VIII, against Defendants, jointly and severally, in an amount to be determined at trial.

(9)   on Count IX, against Defendants, jointly and severally, in an amount to be determined at trial.

(10)  on Count X, against Defendants, jointly and severally, in an amount to be determined at trial, and to consist of the damages suffered by Xtreme in addition to the profits made by Defendants as a result of their violations of the Stored Communications Act, as well as punitive damages;

(11)  awarding Xtreme its costs and expenses, including reasonable attorneys' fees; and

(12)    for such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        March 27, 2008

                                COHEN & GRESSER LLP

                                By: _____
                                    Karen H. Bromberg
                                    (kbromberg@cohengresser.com)
                                    Harvey B. Silikovitz
                                    (hsilikovitz@cohengresser.com)
                                    Kathryn L. Barcroft
                                    (kbarcroft@cohengresser.com)
                                100 Park Avenue, 23rd Floor
                                New York, New York 10017
                                (212) 957-7600

                                *Attorneys for Plaintiff Xtreme Mobile Inc.*